SCHAEFFER PIANO MFG. CO. v. NATIONAL FIRE EXTINGUISHER CO.

NATIONAL FIRE EXTINGUISHER CO. v. SCHAEFFER PIANO MFG. CO.

(Circuit Court of Appeals, Seventh Circuit. August 11, 1906.)

Nos. 1,257, 1,258.

1. PLEADING—VARIANCE—AIDER BY JUDGMENT—ASSUMPSIT.

In an action of assumpsit, in which the declaration contained special counts upon a written contract, where the proof showed a breach of the contract by plaintiff, but also a waiver of such breach by defendant, which constituted in effect a modification of the contract by consent of parties, a judgment for plaintiff is not reversible because such waiver was not pleaded, in view of Rev. St. § 954 [U. S. Comp. St. 1901, p. 696], relating to amendments, and supplemented by 1 Starr & C. Ann. St. Ill. 1896, c. 7, §§ 6, 7, which contain liberal provisions for curing or disregarding errors or defects in pleading and variances in proof after verdict and judgment.

[Ed. Note.—For cases in point, see vol. 39, Cent. Dig. Pleading, §§ 1451–1474.]

2. CONTRACTS—CONSTRUCTION—LIABILITY FOR FIRE LOSS DURING PERFORMANCE—PROPERTY IN MATERIALS.

Plaintiff contracted to equip the plant of defendant with a sprinkler system, furnishing all materials, and erecting the system; the contract providing that plaintiff should have a lien upon the materials and equipment until full payment, with right to enter upon the premises and remove the same in case of default, and also that any loss or damage by fire which might occur to its "material and equipment" while on the premises should be borne by defendant. Held that, under such provisions, title to the equipment remained in plaintiff until completion of the work, and that defendant was liable for equipment destroyed by fire before the completion of the contract, although it had been attached to the building.

3. DAMAGES—BREACH OF CONTRACT—PROXIMATE RESULTS.

In an action on a contract by which plaintiff undertook to equip defendant's plant with a sprinkler system as a protection against fire, defendant cannot set off damages sustained by reason of the destruction of its plant by fire before the equipment was installed, on the ground that such loss resulted from plaintiff's failure to complete the contract within a reasonable time.

[Ed. Note.—For cases in point, see vol. 15, Cent. Dig. Damages, § 37.]

4. CONTRACTS—CONSTRUCTION—SUBJECT-MATTER—LIABILITY FOR FIRE LOSS.

Under a provision of a contract by which defendant agreed to bear any loss or damage by fire on its premises to plaintiff's material and equipment while engaged in equipping defendant's plant with a system of sprinklers, where the system so far as completed was destroyed by fire during the progress of the work, plaintiff was entitled to recover the value of all of the equipment which had been so installed, even though parts of it were not actually destroyed.

5. CORPORATIONS—POWERS—ASSUMPTION OF RISK FROM FIRE TO PROPERTY OF CONTRACTOR.

A manufacturing corporation, as incidental to a contract for an equipment to its plant, has power to assume the risk of any loss by fire to the property of the contractor while on its premises.

[Ed. Note.—For cases in point, see vol. 12, Cent. Dig. Corporations, § 1517.]

6. EVIDENCE—RELEVANCY—VALUE.

Where the labor of installing an equipment in a building enters into its value recoverable on its loss by fire, evidence of the amount expended for such labor is not admissible to establish such value, in the absence of proof that the amount so expended was reasonable.

[Ed. Note.—For cases in point, see vol. 20, Cent. Dig. Evidence, § 271.]

In Error to the Circuit Court of the United States for the Eastern Division of the Northern District of Illinois.

The writ of error No. 1,257 is prosecuted by Schaeffer Piano Manufacturing Company, as the defendant below, in an action of assumpsit, brought by National Fire Extinguisher Company, as plaintiff, upon express contract, to recover the value of its property destroyed by fire, while engaged in equipping the defendant's plant with a fire extinguishing apparatus. Judgment was entered upon findings of a referee, adopted by the court with modifications disallowing certain amounts, and awards recovery against the defendant (plaintiff in error) for $1,685.98 as damages.

No. 1,258 is a cross-writ of error on behalf of the plaintiff below, and error is assigned upon the disallowance of items reported by the referee as recoverable, and judgment accordingly for $1,685.98, instead of $3,963.01, allowed by the referee.

The declaration of the plaintiff below consists of a special count upon the contract, together with the common counts, and additional counts upon the contract. Pleas of general issue and set-off were filed, and demurrers to the pleas of set-off were sustained. Upon waiver of a jury the cause was submitted to the court for trial, and upon consent of counsel was referred to Max H. Whitney, as referee, to take the proofs "and report the same to the court with his conclusions as to the law and the evidence."

The report of the referee is preserved in a bill of exceptions, but without the evidence taken, excepting such portions as are stated in the findings and in a stipulation of facts which is in the record. The referee reported substantially the following findings of fact:

(1) That on the 11th day of July, 1902, the parties entered into a written contract on one of plaintiff's printed forms, as follows:

"Proposal for Equipping the Property of the Schaeffer Piano Company's Plant, Riverview, Illinois, with an Approved System of Fire Extinguishing Apparatus. The work under this proposal consists in furnishing and erecting a system of 1,823 automatic sprinklers, including the necessary piping, and starting with the main upright supply pipes, each of which has an indicator gate and draw-off valve. Also such other materials and labor as are described and enumerated in the within specifications. All the materials to be first class, and all work herein specified to be done in a thorough and workmanlike manner, and in conformity with the Chicago Underwriters' requirements, standard for automatic sprinkler installations. It is agreed that space for materials, light and bench room and facilities for the prosecution of the work

will be accorded on the premises by you, and that the National Fire Extinguisher Company shall have a lien upon the materials and equipment until full payment shall have been made therefor, with right to enter upon the premises and remove the same in case of any default of payment. It is explicitly understood and agreed that no obligations other than herein set forth and made a part of this proposal and acceptance shall be binding upon either party. It is also agreed that any loss or damage by fire which may occur to our materials and equipment while in your premises shall be borne by you. Our price for the work herein specified will be nine thousand two hundred and thirty one ($9,231.00) dollars. Should more or less than 1,823 spriklers be required, they will be charged or credited at $3.25 each. Any additional work or apparatus which may be required, not included in our specification, shall be supplied by you, or if by us, at prices agreed upon. If delay on your part in supplying such additional work or apparatus causes us additional expense, you are to pay such expense.

"National Fire Extinguisher Co., by Wm. Grimshaw.

"We hereby accept the above proposal and agree to pay the National Fire Extinguisher Co., as follows: One third (⅓) when material is on the ground and work begun. One third (⅓) when water is turned into the systems. One third (⅓) when approved by the Chicago Underwriters' Asso. All agreements are contingent upon strikes, accidents, and all delays beyond our control.

"Proposition for Sprinkler Equipment in the Schaeffer Piano Company's Plant, Riverview, Ill.

"Chicago, Ill. July 1st, 1902.

"To Mr. T. E. Dougherty, Prest., 215 Wabash Ave., Chicago—Dear Sir: This proposition in the sum of nine thousand two hundred and thirty one ($9,231.00) dollars, is for a complete 1,823 head sprinkler equipment, divided into eight (8) separate and distinct systems (7 wet and 1 dry), to be installed in the Schaeffer Piano Company's plant, Riverview, Illinois, in strict accordance with the Chicago Underwriters' requirements governing said equipment, issued June 10th, 1902, signed by Mr. Fred W. Southard, engineer, and includes all labor and materials necessary thereto, except as noted below.

"Under this proposition we do not furnish tank foundations or supports, do no carpentry, masonary or earthwork.

"Respectfully submitted.

"National Fire Extinguisher Company, Wm. Grimshaw.

"Accepted, July 11, 1902. Schaeffer Piano Mfg. Co., T. E. Dougherty, Pres. All materials to be on ground, Sept. 1st, 1902.

"This contract modified before signing to read nine thousand one hundred and thirty one ($9,131.00) dollars and it is agreed that in case the underwriters will waive placing the heads in basement section C. a further credit of two hundred and ninety-six ($296.00) dollars is to be made.

"Nat. Fire Extg. Co., Wm. Grimshaw."

"O. K.——T. E. Dougherty."

"(2) That plaintiff without cause failed to have any of the material covered by said contract on the premises of defendant by September 1, 1902, but that this breach of said contract by the plaintiff was condoned and waived by the defendant by its payment of October 4, 1902, and letters of October 4, and 7, 1902," which letters appear in the report and refer to delay in payment because all materials were not yet delivered, so that they considered the first payment not due; but that they now send it and "trust you will push the work to completion as soon as possible." That "said breach was also condoned and waived by the conduct of defendant in repeatedly urging plaintiff to complete said contract without suggesting or intimating that defendant would ask to terminate the contract or claim damages for delay thereunder."

"(3) That defendant during the month of September, 1902, caused the materials for the underground work to be delivered, and this part of the work was proceeded with during the months of September and October, and by the 20th of October the same had been tested by the plaintiff.

"(4) That plaintiff did not prosecute or complete said contract within a rea-

148 F.—11

sonable time, but that this unreasonable delay was not the proximate cause of the loss sued for herein and was contributed to by the defendant through its failure to provide tank foundations and supports.

"(5) That some of the plans for the superstructure were not presented to and approved by the board of underwriters until October 2, 1902, although it was not required that any of the plans be approved before construction was undertaken, and during the month of October most of the materials for the superstructure were delivered upon the ground. The plaintiff caused the superstructure to be installed during the latter part of October, and the months of November and December, and by the 24th day of December the superstructure had been installed with the exception of the attaching pressure tanks and the gravity tank. This latter tank was never delivered on the premises, although it had been completed and ready for shipment for considerable period. Its nonshipment did not affect the ultimate completion of the contract. The pressure tanks were shipped and received at the defendant's factory on December 12, 1902. The period consumed in the erection of the superstructure was materially prolonged by the inability of the plaintiff to obtain access to certain rooms except at times designated by defendant.

"(6) That the tank foundations were, under the contract, to be constructed by the defendant, and on or about September 1, 1902, the parties agreed where these foundations should be placed, and the agent of the plaintiff promised to give to the defendant dimensions and measurements of the several tanks. This agent had previously agreed personally, and not as an agent of plaintiff, to give to defendant the measurements and requirements to enable defendant to put in tank foundations. There was no duty on plaintiff to furnish plans and specifications to defendant for tank foundations, and said agent for plaintiff had previously stated to the same agent of defendant, with whom the conversation of about September 1st was had, that plaintiff company would not be responsible in any manner for the building of the foundations, nor for plans and specifications therefor. The pressure tanks required by the contract might vary in length from 14 to 32 feet, and that of the gravity tank from 6 to 14 feet, and it is customary for the parties to agree as to the place where the foundations are to go, as well as to the size and dimensions of the several tanks. The defendant on several occasions requested of plaintiff the dimensions of the several tanks in connection with request to plaintiff's agent for measurements and requirements for the tank foundations, although defendant never specifically distinguished between dimensions of the tanks and other measurements when making such requests. It was not until October 24, 1902, that plaintiff's agent furnished defendant with such tank dimensions, and then only in connection with the other measurements he had personally agreed to furnish.

"(7) The defendant was guilty of unreasonable delay in the preparation of foundations and supports for tanks, which delay contributed to plaintiff's delay in the completion of said contract.

"(8) That the defendant did not complete the construction of the tank foundations until the day before the fire, which occurred during the night of January 19, 1903, and this delay was contributed to by its waiting for the dimensions of the several tanks and the work being prolonged by the cold weather. I find, however, that the defendant could have gone on with said work of constructing the tank foundations prior to the time of receiving such measurements.

"(9) That on the 19th day of January, 1903, the defendant's factory and the equipment placed thereon by the plaintiff was destroyed by fire, and this fire happened without the fault of either party.

"(10) That plaintiff can only recover herein on the following clauses of the contract sued on: 'It is also agreed that any loss or damage by fire which may occur to our materials and equipment while on your premises shall be borne by you.'

"(11) That by reason of fire occurring on defendant's premises before the completion of said contract, plaintiff suffered a loss to its materials and equipment on said premises as follows:

| | | |
|---|---:|---:|
| Material erected as stipulated ........................... | | $3,950 50 |
| Tools ................................................... | | 156 00 |
| Forbes Curtis Threader (Tools) .......................... | | 165 00 |
| Freight ................................................. | | 96 63 |
| Labor ................................................... | $1,482 94 | |
| Superintendence ......................................... | 127 61 | 1,610 55 |
| 9 4" valves at $24.00.................................... | $ 216 00 | |
| 1 5" valve .............................................. | 29 00 | 245 00 |
| 1,823 sprinkler heads ................................... | | 783 00 |
| | | $ 7,006 68 |
| Less payment of Oct. 4, 1902 ............................ | | 3,043 67 |
| Balance ................................................. | | $3,963 01 |

"(12) That, subsequent to December 24th, the plaintiff entered into another contract with the defendant to equip an addition which was then being built by the defendant with a fire extinguishing apparatus, and used its tools upon the premises, partially for the purpose of completing this work. At the time of the fire, there was upon the premises tools belonging to the plaintiff of the value of $321. There is evidence tending to show that underground materials of the value of $597.50 could be taken up and reused, but no evidence of the cost of taking up such material and preparing the same for reuse. There is also evidence tending to show that the entire equipment was destroyed by said fire of January 19, 1903. These items of tools and underground materials are included in the statement covered by the eleventh finding of fact."

The stipulated facts are consistent with these findings.

The judgment as entered recites as follows: "This cause coming on for hearing on the referee's report, the exceptions thereto, and the evidence and proofs in the case, and the court being duly advised in the premises, doth order and adjudge that the exceptions of the plaintiff to the report of the referee be, and the same are hereby, overruled, and the exceptions of the defendant to the findings of fact contained in the report of the referee be, and the same are hereby, overruled, and that the findings of fact contained in said report be, and the same are, in all respects approved and affirmed. And the court, as a conclusion of law, doth find and doth further order and adjudge that, under the contract sued upon in this case, the plaintiff cannot recover any part of the cost and value of labor, amounting to $1,610.55, specified in the eleventh finding of said report of said referee; neither any part of the value of tools, amounting to $321.00, specified in said eleventh finding; that of the item of $783 for 1,823 sprinkler heads, specified in said eleventh finding, the plaintiff can recover only the sum of $437.52, and that from said sum of $783 there be deducted the sum of $345.48; that from the sum of $3,963.01 specified in the third conclusion of law in the said report of said referee there be deducted the said several sums of $1,610.55 for labor, $321 for tools, and $345.43 for sprinkler heads, leaving the sum of $1,685.98, instead of said sum of $3,963.01; that to the extent of said deductions the exceptions of the defendant to the conclusions of law of said report of said referee are sustained; and that, as so altered and modified by the court, the said report of the referee be, and the same is in all respects, approved and affirmed, and the findings of the said referee, when so altered, stand as the findings of the court, and, as a conclusion of law thereon, the court awards judgment to the plaintiff and against the defendant in the sum of $1,685.98." And judgment is entered accordingly for the recovery of said sum together with costs.

W. S. Oppenheim, for Schaeffer Piano Mfg. Co.

Archibald Cattell, for National Fire Extinguisher Co.

Before BAKER and SEAMAN, Circuit Judges, and LANDIS, District Judge.

SEAMAN, Circuit Judge, after stating the facts, delivered the opinion of the court.

The plaintiff in error in the original suit, who was the defendant below, is designated in this opinion as the "Piano Company," while the plantiff below is referred to as the "Sprinkler Company." As each prosecutes a writ of error, their contentions under one and the other writ are respectively so considered.

## I. On the Writ of the Piano Company.

Upon the finding of facts the sprinkler company recovered judgment for $1,685.98, as damages caused by fire and recoverable against the piano company under a clause of the contract between them for a sprinkler equipment. Reversal is sought by the piano company upon various assignments of error, which are summarized and discussed in the brief of counsel under five propositions, substantially as follows: (1) That the findings of the referee establish nonperformance by the sprinkler company of the terms of the contract in suit, both in the time fixed for delivery of the materials on the ground and in the prosecution and completion of its work within a reasonable time, and thus preclude recovery upon the contract; (2) that the agreement as to loss or damage by fire is not applicable to equipment affixed to the premises of the piano company; (3) that error was committed in sustaining the demurrer to the plea of set-off; (4) that the sum of $597.50 "for underground materials not destroyed by fire" was erroneously included in the judgment; (5) that the contract for indemnity against loss by fire was ultra vires the charter of the piano company.

1. The first proposition is untenable, unless the want of an amended declaration of record, setting up the waiver and excuse found by the referee, constitutes reversible error, under the Illinois rules of pleading and practice which govern the solution. It is true that the contract in writing, which was declared upon and produced, obligated the sprinkler company to have all materials "on ground September 1, 1902," and that the referee states (in the second finding) that it failed, without cause, to have any such materials on the premises at the date so fixed. The referee further finds, however (Id.) that the breach "was condoned and waived by the defendant," by payments made and letters written subsequently (which appear in and sustain the finding), and by its conduct "in repeatedly urging plaintiff to complete said contract without suggesting or intimating" that it would terminate the contract or claim damages. So, the referee further reports (in the fourth finding) that:

"Plaintiff did not prosecute or complete said contract within a reasonable time, but that this unreasonable delay was not the proximate cause of the loss sued for herein and was contributed to by the defendant, through its failure to provide tank foundations and supports."

Assuming that the breaches on the part of the sprinkler company thus reported were of conditions precedent in each instance— promises which were dependent and not independent, under the

rule defined in Dermoth v. Jones, 23 How. 220, 231, 16 L. Ed. 442— the facts settled by these findings (and not reviewable) absolve the sprinkler company from each of the breaches referred to, if such facts of waiver or excuse are open to consideration upon this review. In other words, the findings are, in effect, that the contract was modified in respect of these terms by consent of parties, with no breach of the ultimate contract on the part of the sprinkler company. Nevertheless, it is contended, in effect, that the declaration and additional counts present issue only upon the contract as written, and the finding of breach thereof is conclusive against recovery.

The declaration contains a special count upon the contract as written and the common counts. Under the rules at common law, preserved in Illinois, respecting the forms of pleading, it is unquestionable that waiver of a breach is not provable under this special count, and that, without full performance on the part of the plaintiff, the count upon such contract will not authorize recovery. Crane Elevator Co. v. Clark, 80 Fed. 705, 711, 26 C. C. A. 100, and authorities cited. The additional counts filed declare upon the written contract, with allegations of delay caused by the defendant which authorize proof of the facts found by the referee excusing completion of the work within the time contemplated by the contract; but no allegations appear touching the failure to deliver all materials at the time stipulated. Thus issue was not tendered of waiver or consent to later delivery, by either of the special counts, and the question arises: On this state of the record, must the referee's finding of waiver be set aside, and judgment be reversed upon the finding of delay in the delivery which then remains? Reference to the provisions and policy of the Illinois statutes, regulating the practice—and supplementing the provisions of section 954, Rev. St. U. S. [U. S. Comp. St. p. 696]—frees the inquiry from the strict common-law rule which would otherwise stand in the way, and authorizes a solution, as we believe, in conformity with the issues which were in truth submitted.

While the forms and general rules of pleading at common law are in force in Illinois, the provisions for "amendments and jeofails" in chapter 7 of the Revised Statutes of the state (1 Starr & C. Ann. St. 1896, c. 7) are extremely liberal, both for the allowance of amendments in furtherance of justice, before or after judgment (paragraphs 1 and 2), and for curing or disregarding errors or defects in pleading and variances in proof, after verdict and judgment (paragraphs 6 and 7), and they impress us as equally comprehensive with the Code provisions for like object in neighboring states. The fact that no amendment of the declaration appears of record is not material upon this review, as it was plainly amendable to conform to the proofs, were objection raised in the trial court at any stage, and the submission, with or without amendment, leaves the finding and judgment unassailable (Id., par. 6) for the variance or omission on which they are now challenged. I. & St. L. R. R. Co. v. Estes, 96 Ill. 470, 473; Dick v. Eddings, 42 Ill. App. 488, 489. The general rule in such case, under like statutes of jeofails, is to treat the

pleading as having been amended in conformity with the proof (Columbus Const. Co. v. Crane Co., 98 Fed. 946, 951, 40 C. C. A. 35; 1 Ency. Pleading & Prac. 609, 611), but in any view the objection is not available to reverse the judgment.

2. The second contention rests on the theory that equipment affixed to the premises under the contract became the property of the piano company, and thus not within the clause on which recovery for fire loss is awarded. The sprinkler company contracted to equip the plant of the piano company with a sprinkler system, under a proposal by the former, written on one of its printed forms, which contains (in print) this clause:

"It is also agreed that any loss or damage by fire which may occur to our materials and equipment while in your premises shall be borne by you."

When the equipment was nearly completed, with materials furnished by the sprinkler company, and in so far as concerns the present inquiry affixed to the premises, the entire plant was destroyed by fire, together with the materials and equipment so furnished under the contract. The loss thus suffered by the sprinkler company is the main element of the recovery, and, if the above-mentioned agreement does not plainly extend to equipment affixed in the course of performance, error is well assigned.

The subject-matter of the contract, as recited, was "equipping the property" of the piano company with a sprinkler system; the sprinkler company furnishing all materials and "erecting a system." In the light of the description so given to the undertaking, we are of opinion that the terms of the proposal for indemnity against fire loss, "to our materials and equipment while in your premises," are unmistakable in their meaning, as applicable both to "materials" brought to the premises and to the "equipment" as it was constructed; that each term was appropriately used in such sense—without reference to the technical status of equipment at any stage as a fixture in the plant—and was not ambiguous; and that the contention for excluding the equipment, as affixed to the realty and no longer the property of the sprinkler company, is unsound.

The propositions that the agreement must be strictly construed, both as one in derogation of the general rule and as one proposed and drafted by the sprinkler company, are unquestionable and consistent with the view above stated. The contention, however, that the equipment as it progressed became realty, passing title to the piano company, is untenable, as we believe, within the terms of the contract and under the established doctrine applicable to property so annexed. While it is true that the contract provides for a lien in favor of the sprinkler company "upon the materials and equipment until full payment," it stipulates, as well, "the right to enter upon the premises and remove the same in case of any default." The rule is well recognized that personal property does not become realty through annexation alone, and that, when one contracting party affixes it to the realty of another, the title to the fixture is either reserved in the one or passes to the other, as the nature and terms of the contract intend. This contract was entire, not sever-

able as the work proceeded, and under the general rule applicable to it, irrespective of the provision for removal, there was no severance of ownership, but title to his work remained in the contractor until completion. Huyett & Smith Co. v. Edison Co., 167 Ill. 233, 236, 239, 47 N. E. 384, 59 Am. St. Rep. 272; Tompkins v. Dudley, 25 N. Y. 272, 273, 82 Am. Dec. 349. With the above-mentioned express reservation of right to remove equipment in case of default, it is clear that no passing of title in the course of performance was intended or effected. The other provision for lien until full payment is not inconsistent with this view, as each provided an alternative remedy. While the lien presupposes the passing of title, the waiver of other remedies for its exercise was optional, and it was open to the contractor to waive one or both of these provisions for suit upon the contract.

3. The demurrer to the amended plea of set-off was rightly sustained. The plea avers, in substance, nonperformance by the sprinkler company, within reasonable time, of its contract to equip the plant of the piano company with the sprinkler system, the sole object of which was protection of the plant against fire; that the plant of the value of $200,000 was destroyed by fire, pending performance of such contract, and the defendant suffered damage to the amount of such value by reason of such nonperformance; and judgment is demanded therefor, less any damages awarded the plaintiff. The defense of nonperformance clearly arose under the general issue and is concluded by the findings. Evidence admissible under this plea was equally admissible under that issue, except in reference to establishing the alleged cause of action on behalf of the piano company for its loss by fire, and the allegations of the plea are plainly insufficient for such recovery. The rule is elementary that damages to be recoverable must be the natural and proximate result of the breach or act complained of. Its application to the multitudinous phases of contract obligations—involving, directly or indirectly, anticipated profits and like contingencies—is not always free from difficulty, and it may well appear that the decisions are not harmonious in observing the limitations of the rule; but the general doctrine above mentioned is settled. Howard v. Stillwell & Pierce Mfg. Co., 139 U. S. 199, 206, 11 Sup. Ct. 500, 35 L. Ed. 147. Or, as further defined in Primrose v. Western Union Telegraph, 154 U. S. 1, 29, 14 Sup. Ct. 1098, 38 L. Ed. 883, the damages under any contract are "limited to those which may be fairly considered as arising according to the usual course of things from the breach of the very contract in question, or which both parties must reasonably have understood and contemplated, when making the contract, as likely to result from a breach." The plea states no ground for recovery of the fire loss within either definition, even were it assumed to be a credible and provable fact, as averred, that destruction of the plant "would have been impossible" had the equipment been completed.

4. Error is assigned for including in the judgment "$597.50 for underground materials." The referee expressly finds (eleventh finding) that the fire caused loss to materials and equipment, in "mate-

rials erected as stipulated, $3,950.50"; and in a subsequent (twelfth) finding states: ·

"There is evidence tending to show that underground materials of the value of $597.50 could be taken up and reused, but no evidence of the cost of taking up such material and preparing the same for reuse. There is also evidence tending to show that the entire equipment was destroyed by ·said fire of Jan-uary 19, 1903."

Also (eleventh finding), that "the underground materials are included in the statement" above mentioned. The stipulation of facts is "that the value of the pipe valves and fittings placed underground and included in the above item of $3,950.50 was and is $597.50."

Thus the loss caused by the fire is positively found, in the item referred 'to, and the confusion arises from the irrelevant reference to ·evidence which is not preserved. It it unnecessary, however, to rest ·support for the judgment on the first-mentioned finding, as controlling, for the reason that the fact appears from all the recitals that the so-called "underground materials" were completed portions of the equipment, and, as such, became useless for the purposes of the contract when the plant was destroyed. The contractor had converted his 'materials into equipment in performance of his contract, and thus brought it within the stipulated liability for "loss or damage by fire which may occur." With its identity. and value as a sprinkler equipment lost by fire, his loss was total in the sense of the contract, and liability therefor was not dependent upon actual destruction by fire of the materials in the structure. 2 May on Insurance, § 421a. The contract imposed no duty upon the sprinkler company to recover materials so used, and it is not chargeable with their value as wreckage. Any value they may have for use in a restored plant does not concern the sprinkler company after payment of its loss. No reversible error appears in this allowance.

5. The remaining contention, that the agreement to pay the loss was ultra vires the corporation, is without merit. That the piano company, a manufacturing corporation, cannot embark in thle business of insurance, banking, or other lines not authorized by the statute under which it is organized (section 1, c. 32, 1 Starr & C. Ann. St. Ill.); is unquestionable. Within the lines of business for which it is incorporated, however, the power to enter into contracts is commensurate with that of natural persons. Incidental to the contract for the sprinkler equipment is the assumption of risk for any loss by fire to the contractor's property while engaged in the work. The right to contract for the work extends to the incidental terms and obligations, and the agreement in question is of this character whether named an insurance promise or otherwise. It appears to be unobjectionable for other cause, and is not ultra vires.

### II. On the Cross-Writ of the Sprinkler Company.

Errors are assigned for the several deductions made by the trial court from the allowance by the referee, in entering judgment, namely: (1) The sum of $1,610.55 for "labor" and "superintendence"; (2) $321 for "tools" on the premises when the fire occurred; (3),

$315.48 deducted from the finding of $783, as the value of "sprinkler heads."

The first and second items referred to were rightly excluded, as there are no facts found to bring either within the contract in suit. Assuming that the item of $1,610.55 inferentially represents the expenditure for labor and superintendence, the actual value only of "materials and equipment" lost by fire is recoverable. Upon such bare statement, in the absence of evidence to fix the value of the product, the fact of expenditure is insufficient to that end—cannot be accepted as primary evidence of value, and if admissible in any view must be accompanied with proof of reasonableness. The charge of $321, as stated in the finding (twelfth), applies, without discrimination, to tools used in performing another contract, and no fact is found to authorize recovery under the contract in suit, in any view of its terms. So the question discussed in the briefs, whether tools are within the meaning of the terms "materials and equipment," does not require solution. The deduction of $345.48 from the valuation of sprinkler heads in the finding impresses us to be unauthorized. The judgment recites that all exceptions to the report of the referee are overruled, that the findings of fact "are in all respects approved and affirmed," and that, "as a conclusion of law," the above-mentioned deduction is made from the value fixed by the referee. The referee states the single valuation of $783, together with the fact of loss. No other facts appearing, the value was purely a question of fact. So, if the cost of labor entered into that valuation (as stated in the opinion filed at the hearing below), such fact—were consideration of its value deemed erroneous, which we do not intimate—is not preserved in the record and with the findings of fact adopted by the court, the conclusion to deduct $345.48 cannot be upheld.

Upon the original writ of error the judgment is affirmed. Upon the cross-writ the various assignments of error are overruled, except that in reference to the above-mentioned deduction of $345.48. Such assignment is sustained, and the judgment will be corrected accordingly. The cause is remanded for further proceedings in conformity with this opinion.