PUGET SOUND NAVIGATION CO. v. LAVENDER et al.*

(Circuit Court of Appeals, Ninth Circuit.   March 2, 1908.)

No. 1,425.

1. PLEADING—SUFFICIENCY OF COMPLAINT.

A complaint based on negligence in the equipment and management of a vessel is not insufficient after verdict because it alleges the ownership and operation of the vessel by defendant in the present tense only, where it further alleges that the negligent acts specified were those of defend-ant.

2. DEATH—ACTION FOR CAUSING DEATH—EVIDENCE—EARNINGS OF DECEASED.

In an action for wrongful death, it was competent for the wife of the deceased to testify that he was engaged to go upon a voyage and the amount he would have earned by it, based upon his earnings on a like voyage made the previous year.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Death, § 88.]

3. APPEAL AND ERROR—REVIEW—HARMLESS ERROR—EVIDENCE.

Permitting a witness to testify to the death of a person by drowning, although the witness was not present and had no personal knowledge of the fact, if error, was harmless, where she stated that her knowledge was from hearsay, and where the fact was proved by others who were eye-witnesses and was undisputed.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, §§ 4161–4170.]

4. SAME.

A statement made by a bystander to the captain of a vessel after the drowning of a member of the crew, giving his opinion that it was due to the fault or negligence of the officers and crew in failing to save the drowning man, was not admissible in evidence as part of the res gestæ, but its admission was harmless error, where the jury by special findings placed the liability of the vessel owner for the death on other grounds.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, §§ 4171–4177.]

5. SAME—OPINION EVIDENCE.

Permitting a witness who was not an expert to state what would occur if a person attempted to open a defective port on a vessel was not re-versible error, where from his description of the condition of the port the result of such an attempt would be obvious.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, §§ 4153–4186.]

---

*Rehearing denied June 10, 1908.

**6. SAME—CURE BY INSTRUCTION.**

Permitting the testimony of a witness as to a fact to remain in the record subject to objection, although he admitted on cross-examination that his statement was based upon hearsay only, was not reversible error where the jury were expressly instructed that such testimony was incompetent, and should not be considered.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, §§ 4178–4184.]

**7. MASTER AND SERVANT—ACTION FOR CAUSING DEATH—SUFFICIENCY OF EVIDENCE.**

Evidence considered, and *held* sufficient to sustain a verdict finding that the drowning of a member of. the crew of a vessel, who was sent to open a port, was due to the defective condition of the port,· the gate of which fell out with him when opened.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 959.]

In Error to the Circuit Court of the United States for the Northern Division of the Western District of Washington.

See 156 Fed. 361.

Ira Bronson and D. B. Trefethen, for plaintiff in error.

Byers & Byers, for defendants in error.

Before GILBERT, .Circuit Judge, and DE HAVEN and HUNT, District Judges.

GILBERT, Circuit Judge. At a previous term of this court this cause, after a hearing upon the merits, was ordered dismissed for the reason that in the complaint, as shown by the record, there was lack of jurisdictional averments. 156 Fed. 361. Upon a petition for a rehearing it was made to appear that the cause had been removed from a state court to the Circuit Court, and that the petition for such removal had set forth the diversity of citizenship necessary to justify removal and to show jurisdiction in the Circuit Court. On that petition and a supplemental record showing the facts so alleged, the dismissal of the cause ordered by this court was set aside, and the case was reinstated for decision on the merits. The plaintiff in the court below was Mary R. Lavender, the widow of R. O. Lavender. The complaint alleged, in substance, that on November 3, 1904, R. O. Lavender was employed by the plaintiff in error upon the steamer Lydia Thompson in the capacity of watchman; that he was directed by the mate of said vessel to open the port on the port side of said vessel preparatory to making a landing at the wharf at. Olga; that the port was so defectively and dangerously constructed and in such poor repair that it was dangerous to one to open the same, and the defects were known to the plaintiff in error, or by ordinary care should have been known to it, and were unknown to the said R. O. Lavender;' that, when he attempted to and did open the port, he fell through the opening into the water and was drowned. The complaint also alleged negligence in the failure of the mate to cause an immediate alarm and to· promptly lower a boat to rescue said Lavender, and further alleged that the steamer was not properly and sufficiently manned, in that there was no lookout thereon to give an alarm in case of accident. The cause was tried before a jury, and a

verdict rendered for the plaintiff therein in the sum of $5,500. The jury being requested that, in case they returned a verdict for the plaintiff, to state the specific acts of negligence on the part of the defendant which were the proximate cause of the death of said Lavender, answered: "Defective port and ship not properly manned."

It is assigned as error that the court below permitted a judgment to be based upon a complaint which failed to allege that the plaintiff in error owned or operated the vessel at the time of the accident. The amended complaint, which was filed some seven months after the date of the accident, alleged:

"That the defendant, the Puget Sound Navigation Company, is the owner and operator of a certain steamer called the 'Lydia Thompson.'"

It is argued that this is no allegation that the plaintiff in error owned the steamer at the time of the accident, and therefore it is insufficient to sustain the judgment. It is true that the allegation of the complaint states the ownership of the steamer by the plaintiff in error in the present tense, but in setting forth the accident which occurred to the decedent on November 3, 1904, the complaint directly alleges the same to have been the result of negligence on the part of the plaintiff in error in not having said steamer properly manned, etc.; the plain inference of the pleading being that at that date the plaintiff in error owned and operated the steamer. In the absence of a demurrer or a motion to make the complaint more specific, or objection to the testimony on that ground, the plaintiff in error, after having defended in the court below on the assumption that it owned and operated the steamer at the date of the accident, cannot now in this court avail itself of the alleged defect in the complaint.

It is contended that there was error in allowing Mary R. Lavender to testify on the trial that R. O. Lavender was engaged for a voyage soon to commence, under which he was to have $50 a month and a percentage of profits in addition thereto, which "would amount to $1,500 a year or more." This statement, the witness explained, was based upon his earnings under like conditions on a voyage made the previous year. We see no error in admitting the testimony. It was competent for the witness to testify of her own knowledge what the deceased was making, and that was in substance what she testified to.

Error is assigned to the ruling of the court in allowing Mrs. Lavender to testify to the positive fact of the death of R. O. Lavender. It is urged that there was no evidence that she knew that he was dead, and that she could have known nothing thereof of her own knowledge. But she had already testified, without objection, that Lavender was drowned on November 3d. On a repetition of the question the objection was made that she had no knowledge as to his death. The objection was overruled, and she repeated her answer that he was drowned on November 3, 1904. She afterwards admitted that her knowledge was derived from the statements of others. The jury fully understood the nature of her testimony and the source of her knowledge. There was testimony of other witnesses showing the fact of Lavender's death by drowning on that date, and no evidence

whatever was offered to contradict it. If there was error, therefore, in the admission of the testimony so given by the witness, it was harmless.

Error is assigned to the refusal of the court to strike out the testimony of E. J. Glover as to what he said to the captain after the boat had been lowered for the purpose of picking up Lavender, and the effort to rescue him had been abandoned. He testified:

"I turned to the captain, and told him it was a cold-blooded piece of murder, as I thought."

A motion to strike this out as immaterial, irrelevant, and incompetent was overruled. The evidence was permitted to remain in the case not as probative of negligence on the part of the plaintiff in error, but as a part of the res gestæ. In regarding it as properly admissible as of the res gestæ, we think the court below was in error, for the statement so made by the witness was but the expression of the opinion of a bystander after the event. But we are not convinced that there was reversible error in the ruling of the court. The witness testified fully as to all that he observed concerning the efforts of the officers and crew of the steamer to rescue the watchman from drowning, and the jury, if they credited his testimony, might or might not find negligence therein. It is clear, however, that the jury were not influenced in their verdict by this expression of opinion, because in their special verdict in answer to the question as to what negligence, if any, caused the accident, they specified that it was the defective port and the failure to properly man the ship. The statement of the opinion of the witness Glover was directed solely to the unsuccessful efforts of the officers and men to rescue the watchman from drowning. At the time when he made the remark, which he testifies he did make to the captain, he knew nothing whatever, as the jury well knew, of any defect in the port, and knew nothing whatever about the manning of the ship. It is plain, therefore, that the jury who heard his testimony understood his remark to the captain to refer solely to his opinion as to the handling of the small boat, or delay in getting it out, or the failure to pick up the man whom the witness saw, as he testified, floating in the water near the boat and within reach.

The objection is made that the witness Glover was allowed to testify what the result would be if a man attempted to pull the upper doors of the port around while the lower door of the port was unfastened. It is urged that this testimony was incompetent for the reason that the witness was not a seaman nor an expert. The witness very fully explained to the jury the condition of the doors of the port and their fastenings as he saw them soon after the accident. In the light of that description, it needed no expert to say what would be the result of the attempt to pull the upper doors around. It was a matter of which any one could testify for the result was plain and obvious to any observer.

It is contended that the court below erred in permitting the witness Höhl, who had testified that Lavender fell out through the port, to explain how he knew it if he did not see it. He answered that, when he went below, the fireman told him how Lavender went out. This

answer was taken subject to objection. If there was error in its admission, it was cured by the charge to the jury, in which the court said:

"The jury must base their verdict upon competent and legal evidence. The direct testimony of eyewitnesses is referred to as contradistinguished from proved facts and circumstances which may be equally convincing as the testimony of eyewitnesses—those who saw and heard the actual transaction, but the court does not mean for you to infer that hearsay reports testified to by witnesses on the stand are to take the place of legal evidence. A witness who details to the jury a fact as a fact which he knows only because another person, when not under oath, has told it to him, does not give competent legal evidence. Under the law of the country facts that are put in issue have to be proved on the trial of a case in court by the sworn testimony of witnesses, and the law does not permit an invasion of that rule by allowing a person to make a statement of a fact which he claims to know by reason of being told by some one else, when that some one else has not come into court and sworn to it, and that does not make it sworn evidence or competent evidence, and every statement of that kind detailed by a witness on the trial should be disregarded by the jury."

It is strenuously urged that the court erred in refusing to instruct the jury to return a verdict for the plaintiff in error, and the rule is invoked which was expressed in Patton v. Texas & Pacific Ry. Co., 179 U. S. 658, 21 Sup. Ct. 275, 45 L. Ed. 361, where it was said:

"A different rule obtains as to an employé. The fact of accident carries with it no presumption of negligence on the part of the employer, and it is an affirmative fact for the injured employé to establish that the employer has been guilty of negligence."

The further rule is invoked that:

"It is not sufficient for the employé to show that the employer may have been guilty of negligence. The evidence must point to the fact that he was. And where the testimony leaves the matter uncertain, and shows that any one of half a dozen things may have brought about the injury, for some of which the employer is responsible, and for some of which he is not, it is not for the jury to guess between these half a dozen causes, and find that the negligence of the employer was the real cause, when there is no satisfactory foundation in the testimony for that conclusion."

It was impossible for the jury to be in doubt as to what cause produced the death of Lavender. He was a shipmaster of experience, temporarily employed on the steamer, and was making his first voyage thereon. He had never opened the port of the vessel. He was instructed to go below to open the upper portion of the port consisting of two doors meeting in the center, and to prepare for landing at Olga. The lower half of the port consisted of a heavy gate let into the side of the vessel. He went below, and was seen at the port endeavoring to open it, and then disappeared from view. The port stood open. The gate which closed the lower portion of it had gone out. There was proof tending to show that the gate had been fastened at but one end, and that, if one opened the upper doors, the result would be to precipitate him into the water through the yielding of the unfastened lower gate. The proof is convincing that Lavender fell into the water through the port, and was drowned. There is no room for conjecture as to the cause of the accident, if accident it was, and, if it was not an accident, the only other tenable hypothesis is suicide. There was sufficient in the evidence to disprove the theory of suicide. One strong and convincing circumstance was the fact that the gate went out into

the water at the same time that Lavender did. Another is the fact that Lavender was heard calling for help, and that he seemed to be exerting himself to the last and until he finally sank from cold and exhaustion. We are unable to see how, under the evidence in the case, the court properly could have instructed the jury to find a verdict for the plaintiff in error.

We find no error for which the judgment should be reversed. It is therefore affirmed.