## DULUTH ST. RY. CO. v. SPEAKS.

### (Circuit Court of Appeals, Eighth Circuit. March 22, 1913.)

### No. 3,811.

**1. APPEAL AND ERROR (§ 537*)—BILL OF EXCEPTIONS—RECORD.**

An alleged bill of exceptions, printed in the record on writ of error, cannot be considered, where it does not appear that it was ever presented to the trial judge for any purpose, or that he settled, signed, or allowed it.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2404, 2405; Dec. Dig. § 537.*]

**2. APPEAL AND ERROR (§ 701*)—REVIEW—INSTRUCTIONS—NECESSITY OF EVIDENCE.**

Action of the trial court in giving and refusing instructions cannot be reviewed on a writ of error, without a properly settled bill of exceptions containing the evidence in the record.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2933–2935; Dec. Dig. § 701.*]

**3. APPEAL AND ERROR (§ 193*)—OBJECTIONS TO COMPLAINT—REVIEW—NECESSITY OF OBJECTION AT TRIAL.**

An objection to a complaint, first made on a writ of error, will only be sustained if it fails to allege the substance or foundation of a good cause of action, and is so insufficient that it is impossible to cure the defect by amendment or by verdict, since otherwise the court is required to allow an amendment to cure the defect by Rev. St. § 954 (U. S. Comp. St. 1901, p. 696).

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1226–1238, 1240; Dec. Dig. § 193.*]

In Error to the District Court of the United States for the District of Minnesota; Page Morris, Judge.

Action by Harry E. Speaks against the Duluth Street Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Thomas S. Wood, of Duluth, Minn., for plaintiff in error.

W. M. Steele, of Superior, Wis. (C. R. Fridley, of Superior, Wis., on the brief), for defendant in error.

Before HOOK and SMITH, Circuit Judges, and VAN VALKENBURGH, District Judge.

SMITH, Circuit Judge. The Duluth Street Railway Company is a corporation existing under the laws of Minnesota and authorized to do business in Wisconsin. At the time here in question it owned and operated an electric railroad in Duluth, Minn., and to and in Superior, in Wisconsin, and as a part thereof it operated a double-track electric railroad on Tower avenue, a north and south street in the city of Superior. Cars passing south used the westerly track,

---

and cars passing north used the easterly track. It appears that the company operated its cars so as to stop upon the far, rather than the near, side of intersections.

This action was brought by Harry E. Speaks, who alleged that on February 16, 1910, he as a passenger entered one of the defendant's south-bound cars on Tower avenue and paid his fare to be transported to the intersection at North Seventeenth street with Tower avenue.

"6. That upon approaching said North Seventeenth street the plaintiff signaled the motorman of the car he was riding upon to stop the same at said crossing, and that said motorman did stop the car on the south side of said crossing, and opened the rear doors and gates thereof to permit plaintiff to alight; that plaintiff disembarked from said car on the westerly side thereof, and passed around the rear end thereof to go to the easterly side of Tower avenue, to proceed thence to his home, and while he was proceeding with due care and caution, and just as he was about to step from behind the car upon which he had been riding toward the said easterly track to cross the same, and while his south view of said easterly track was wholly obscured and obstructed by the standing car, from which he had just alighted, and when defendant should reasonably have anticipated that passengers were disembarking from said standing car and might pass therefrom onto said easterly track, said defendant, disregarding its duty to plaintiff to exercise due care for his safety, without sounding any bell or gong, or giving any warning, and without bringing the car to a stop, or slowing down the speed thereof whatsoever, propelled one of its cars along said easterly track, past the car which plaintiff had just alighted from, at a dangerous, excessive, and high rate of speed, to wit, at a rate of speed exceeding 20 miles per hour; that by reason of negligence of defendant as aforesaid plaintiff was in imminent danger of being run over and severely injured or killed by said rapidly moving car, and to avoid the danger thereof and to save his own life plaintiff was compelled to and did throw himself backward and away from said moving car, and in so doing, by reason of the sudden and great exertion necessary thereto, received and sustained a severe abdominal hernia to his right side, and other severe internal and external injuries to his person, and was thereby made sick, sore, and lame, and caused to suffer severe pain and mental anguish for a long time; that plaintiff still suffers at times much pain and inconvenience therefrom; that plaintiff is informed and believes that his said injuries are permanent and are incurable, and will cause him much pain, both physical and mental, in the future; that as aforesaid plaintiff has suffered and still suffers great physical pain and mental anguish on account of said injuries, and in addition thereto because thereof has been injured and impaired in his ability to pursue many of the gainful avocations of life, has had the probable term of his life materially shortened, has since been and in the future will be unable to obtain life insurance on his own life, and has been otherwise injured and made to suffer loss, all to his great damage in the sum of thirty thousand ($30,000) dollars.

"7. And plaintiff further shows to the court that by reason of having so received said injuries he was compelled to incur expense for medical care and treatment of his said injuries, and in the purchase of necessary supports and appliances to truss and support the injured parts, and has thereby been damaged in the further and additional sum of one hundred fifty ($150) dollars, which was and is a reasonable sum, and that in the future he will in like manner be compelled to expend and pay out money for such medical care, and for supports and trusses, the amount whereof plaintiff cannot now state, but that he believes it will be large.

"8. And plaintiff further alleges the fact to be that all of said injuries, and consequent pain, suffering, loss, and damage, were solely and proximately produced and caused to plaintiff by the negligence and want of care of defendant as aforesaid, and without fault or negligence on plaintiff's part."

He further alleged:

"That a promulgated rule and regulation of said company to its employés operating its cars, as well as the exercise of ordinary care for the safety of alighting passengers and other persons crossing the streets where the defendant's tracks are laid, requires and then required that, when a car has stopped at a crossing, cars approaching or about to pass in the opposite direction on the other track shall slow down or stop while alongside of the standing car, and shall sound a bell or gong to warn alighting passengers and pedestrians crossing the street of the car's approach."

The street railway company having answered, a trial was had to a jury, who found for the plaintiff below, and fixed his recovery at $5,000. The court required a remittitur to $2,500, and, this having been filed, rendered judgment for that amount, and the street railway company sued out a writ of error to this court.

The assignment of errors filed in the District Court under rule 11, and the specification of errors here under rule 24, refer exclusively to the giving of certain instructions and the refusal to give certain instructions asked.

[1, 2] There is printed what purports to be a large amount of evidence under the heading "Bill of Exceptions"; but it does not appear to have been settled, signed, or allowed by the judge. It does not appear to have even ever been presented to him for any purpose. It is quite clear that without a bill of exceptions we cannot pass upon any of the questions raised by the assignment and specification of errors. Of course, it is impossible to pass upon the correctness of the action of the trial court in giving and refusing instructions without the evidence then before it. Kinney v. United States Fidelity & Guaranty Co., 222 U. S. 283, 32 Sup. Ct. 101, 56 L. Ed. 200.

The street railway company insists, however, that if this should be the ruling of the court under rule 11, the court at its option may notice a plain error not assigned, and then calls attention to the fact that, as it contends, the complaint does not state a cause of action. So far as material, the complaint has been set out, and notwithstanding it was never assailed in any way in the court below by motion or demurrer, and no error was assigned there or specified here, the street railway company claims upon strict analysis the complaint is insufficient, and that this is such a plain error that the case should be reversed, citing United States v. Tennessee & Coosa Railroad Co., 176 U. S. 242, 20 Sup. Ct. 370, 44 L. Ed. 452.

That case simply held that a bill to forfeit a certain land grant was sufficient to warrant a forfeiture of part of the grant, and that where the evidence only showed a right to forfeiture of part, and did not sufficiently show what part the government was entitled to cancel, the case should be reversed. In that case the one successful below was seeking to uphold the decree on the ground that the bill, being framed to procure a forfeiture of the entire grant, was not sufficient to warrant a decree for the government for part of the relief prayed. In overruling this contention the decision was manifestly correct, but in this case for the first time it is suggested in this court the complaint did not state a good cause of action.

Revised Statutes, § 954 (U. S. Comp. St. 1901, p. 696), provides:

"Sec. 954. No summons, writ, declaration, return, process, judgment, or other proceedings in civil causes, in any court of the United States, shall be abated, arrested, quashed, or reversed for any defect or want of form; but such court shall proceed and give judgment according as the right of the cause and matter in law shall appear to it, without regarding any such defect, or want of form, except those which, in cases of demurrer, the party demurring specially sets down, together with his demurrer, as the cause thereof; and such court shall amend every such defect and want of form, other than those which the party demurring so expresses; and may at any time permit either of the parties to amend any defect in the process or pleadings, upon such conditions as it shall, in its discretion and by its rules, prescribe."

This was substantially section 32 of the act to establish the judicial courts of the United States, passed at the first session of the first Congress and was based on the English statute of 32 Henry VIII.

[3] It is manifest that, had the street car company by demurrer or otherwise attacked the complaint below, it could have been amended; but it failed to do so. Of course, if it appeared that it was impossible to have amended the complaint, this court would probably hold, even after verdict, the question could be raised here. In Phillips & Colby Construction Co. v. Seymour et al., 91 U. S. 646, 23 L. Ed. 341, the Supreme Court said:

"There is no room here for amendment. There could have been none in the court below. To allow a verdict to stand which is responsive to no issue made by the pleadings, or which could have been made by any pleading in that action, is farther than we can go in the promotion of abstract justice."

The complaint here in question has now been aided by verdict, and the sole question is whether with such aid it is sufficient. In Re First National Bank of Belle Fourche, 152 Fed. 64, 81 C. C. A. 260, 11 Ann. Cas. 355, a bankruptcy case, this court, by Judge Sanborn, said:

"The sufficiency of this pleading was not challenged until more than a month after the adjudication upon it, and after verdict or judgment an objection that the petition fails to state facts sufficient to constitute a cause of action is tenable only when the pleading fails to allege the substance or foundation of a good cause of action, and the fact that it is otherwise defective, informal, indefinite, or incomplete is no longer material."

This was but a reiteration of the long-established rule of this court. Glaspie v. Keator et al., 56 Fed. 203, 5 C. C. A. 474; City of Plankinton v. Gray et al., 63 Fed. 415, 11 C. C. A. 268; Keener et al. v. Baker, 93 Fed. 377, 35 C. C. A. 350; Mine & Smelter Supply Co. v. Parke & Lacy Co., 107 Fed. 881, 47 C. C. A. 34. It is, indeed, the general rule. Roberts v. Graham, 6 Wall. 578, 18 L. Ed. 791; Palmer v. Arthur, 131 U. S. 60, 9 Sup. Ct. 649, 33 L. Ed. 87; Nashua Savings Bank v. Anglo-American Land, Mortgage & Agency Co., 189 U. S. 221, 23 Sup. Ct. 517, 47 L. Ed. 782. And the same rule has been laid down in a number of the circuits. Day, Circuit Judge, now a Justice of the Supreme Court, announced it in Monarch Cycle Mfg. Co. v. Royer Wheel Co., 105 Fed. 324, 44 C. C. A. 523. And it has been so decided in Nashua Savings Bank v. Anglo-American Land Mort-

gage & Agency Co., 108 Fed. 764, 48 C. C. A. 15, Robinson v. Louisville Ry. Co., 112 Fed. 484, 50 C. C. A. 357, Schaeffer Piano Mfg. Co. v. National Fire Extinguisher Co., 148 Fed. 159, 78 C. C. A. 293, and in Puget Sound Navigation Co. v. Lavender et al., 160 Fed. 851, 87 C. C. A. 655.

Whatever may have been the defects in this complaint, aided as it is by verdict, they do not constitute a plain error of which this court can now take notice without assignment; and it follows the judgment must be affirmed.