HEINZ v. NATIONAL BANK OF COMMERCE IN ST. LOUIS et al.

(Circuit Court of Appeals, Eighth Circuit.  September 4, 1916.)

No. 4531.

1. Corporations ⟨⟩⟩211(4)—Suit by Stockholders—Conditions Precedent.

Complainant, who was the owner of a fraction of 1 per cent. of the stock of a national bank, brought suit against the bank and a former president to set aside an agreement between the directors and such officer under which, on his resignation, he was paid a sum in cash in settlement of his claim to participation in a pension fund established by resolution of the stockholders.  Complainant alleged a request to the directors to bring suit to recover the money, and their refusal, and that the suit was not collusive, but did not allege any application to the stockholders, although there had been a meeting since the transaction.  There was no allegation of fraud, nor that the directors owned a controlling stock interest, nor that they had any interest adverse to that of the corporation or the other stockholders.  Held, that complainant did not show compliance with the requirements of equity rule 27 (198 Fed. xxv, 115 C. C. A. xxv) to entitle him to maintain the suit.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 817;  Dec. Dig. ⟨⟩⟩211(4).]

2. Corporations ⟨⟩⟩389—Implied Powers—Judgment of Directors and Stockholders.

In determining whether an act of a corporation is within its implied or incidental powers, the judgment of the directors and stockholders, while not conclusive, is entitled to consideration.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1568–1571;  Dec. Dig. ⟨⟩⟩389.]

3. Banks and Banking ⟨⟩⟩260(1)—National Banks—Implied Powers.

The stockholders of a national bank have the incidental power to create a pension fund to be shared by officers and employés.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 977, 978, 986½–990;  Dec. Dig. ⟨⟩⟩260(1).]

4. Corporations ⟨⟩⟩389—Powers—Presumption.

Acts of a corporation are presumed, in the absence of evidence to the contrary, to be within either the express or implied powers of the corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1568–1571;  Dec. Dig. ⟨⟩⟩389.]

5. Contracts ⟨⟩⟩54(1)—Consideration.

A contract by the directors of a national bank to pay a retiring president a sum of money in part consideration of his waiver of participation in a pension fund created by the bank in which he had the right to share held not without consideration.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 233;  Dec. Dig. ⟨⟩⟩54(1).]

'6. CONTRACTS ⊚⟹117(2)—LEGALITY—CONTRACTS IN RESTRAINT OF TRADE.

An agreement by the retiring president of a bank not to enter into the employment of any other bank or trust company in the same city for a term of less than a year is not invalid as against public policy.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 555, 556, 568; Dec. Dig. ⊚⟹117(2).]

Appeal from the District Court of the United States for the Eastern District of Missouri; Jacob Trieber, Judge.

Suit in equity by Charles G. Heinz against the National Bank of Commerce in St. Louis and others. Decree for defendants, and complainant appeals. Affirmed.

Dorsey A. Jamison and Shepard Barclay, both of St. Louis, Mo. (Jamison & Thomas and Barclay, Orthwein & Wallace, all of St. Louis, Mo., on the brief), for appellant.

H. S. Priest, of St. Louis, Mo. (Boyle & Priest, William E. Baird, and George T. Priest, all of St. Louis, Mo., on the brief), for appellees.

Before SANBORN, Circuit Judge, and REED and BOOTH, District Judges.

BOOTH, District Judge. Suit in equity by a stockholder of the defendant bank, a corporation organized under the national banking laws, to compel the defendant B. F. Edwards to refund to the bank the sum of $50,000, which the plaintiff alleges was paid to him by order of the board of directors, gratuitously and without consideration. The trial court, upon the hearing, dismissed the suit for want of equity. The following facts appear from the record:

That the defendant bank is a corporation engaged in the banking business at St. Louis, Mo., and organized under the National Banking Act; that the plaintiff Heinz is a resident of the state of Illinois, and a stockholder in said bank; that on the 24th of April 1913, the defendant B. F. Edwards was president of said bank, and had been an officer of said bank, or connected therewith as an employé, for more than 25 years, and was drawing a salary in the year 1913 of $25,000 a year, and for several years prior thereto had drawn the same or a larger salary. On April 24, 1913, the following instrument was executed by Mr. Edwards:

"St. Louis, April 24, 1913.

"In consideration of the payment of the sum of fifty thousand dollars ($50,000), this day made to B. F. Edwards by the National Bank of Commerce in St. Louis, he hereby waives participation in the pension fund, salary for the remainder of the year, and all other claims against said bank, and agrees not to enter the employ or engage in the business of any St. Louis bank or trust company, nor use his influence in behalf of any other bank or trust company, prior to December 31, 1913. [Signed] B. F. Edwards."

This instrument was approved on the last-mentioned date by a resolution of the board of directors of the bank, and the money paid to Mr. Edwards. On said date Mr. Edwards resigned from the bank, and thereafter and during the remainder of that year did not enter into the employ or engage in the business of any St. Louis bank or trust company.

In the year 1900 the board of directors of said bank, pursuant to a resolution of the stockholders, established a pension fund for the officers and employés of the bank, the rules and regulations concerning which were by the resolution of the stockholders, to be enacted from time to time by the board of directors. Pursuant to said vote of the stockholders, the board of directors thereafter adopted certain rules and regulations in reference to said pension fund, and among others the following:

"(a) If the employment has been continuous for five years, then during the period of disability the pensioner shall be paid monthly 10 per cent. of the average monthly salary received by him during said 5 years of service. If the time of employment has been over 5 years, then 2 per cent. shall be added for each full year of employment until 25 years or more is reached, when the pensioner shall be paid monthly 50 per cent. of the average monthly salary received by him during said entire term of service; but no pension shall monthly exceed 50 per cent. of the average monthly salary for the whole time of service.

"(b) No officer or employé, whose connection with the bank is severed before the expiration of 25 years of continuous service, for any reason other than physical disability, shall receive any benefit from the fund.

"(c) Officers and employés severing their connection with the bank after 25 years or more of continuous service for any reason whatever, other than neglect of duty, shall receive pensions as above provided, such pensions, however to cease if the beneficiary accepts a position in any other bank or trust company."

It is claimed, upon behalf of the appellant, that the instrument above set forth, signed by Mr. Edwards, approved by the board of directors, and purporting to be a contract, was ultra vires the bank, that it was without consideration and that the payment of the money thereunder to Mr. Edwards was a mere gratuity. It is claimed on the part of the appellees that the contract was not ultra vires the bank, and that it was upon a good and valuable consideration. It is further claimed by the appellees that the plaintiff cannot maintain the present suit, because he has not shown compliance with equity rule No. 27 (198 Fed. xxv, 115 C. C. A. xxv), which reads as follows:

"Every bill brought by one or more stockholders in a corporation against the corporation and other parties, founded on rights which may properly be asserted by the corporation, must be verified by oath, and must contain an allegation that the plaintiff was a shareholder at the time of the transaction of which he complains, or that his share had devolved on him since by operation of law, and that the suit is not a collusive one to confer on a court of the United States jurisdiction of a case of which it would not otherwise have cognizance. It must also set forth with particularity the efforts of the plaintiff to secure such action as he desires on the part of the managing directors or trustees, and, if necessary, of the shareholders, and the causes of his failure to obtain such action, or the reasons for not making such effort."

Two questions present themselves for consideration: First, whether the plaintiff can maintain the present suit; second, whether there was any consideration for the payment by the bank to Edwards of the $50,000 in question.

[1] Equity rule No. 27 is the same as former equity rule No. 94, with the following clause added to the original rule: "Or the reasons for not making such effort." The reason for the rule was twofold.

In' Del. & Hudson Ry. v. Railway Co., 213 U. S. 435, 29 Sup. Ct. 540, 53 L. Ed. 862, the court said:

"The purpose of rule No. 94 hardly needs explanation. It is intended to secure the federal courts from imposition upon their jurisdiction and recognizes the right of the corporate directory to corporate control; in other words, to make the corporation paramount, even when its rights are to be protected or sought through litigation. Cases in this court have indicated such right. But the directory may be derelict and the interests of the stockholders put in peril, and a case hence arises in which the right of protecting the corporation accrues to them. Rule 94 expresses primarily the conditions which must precede the exercise of such right, but emergencies may arise in which the antagonism between the directory and the corporate interest may be unmistakable, and the requirements of the rule may be dispensed with, or, it is more accurate to say, do not apply."

In Hawes v. Oakland, 104 U. S. 450, 26 L. Ed. 827, four classes of cases are given in which, under certain circumstances, a stockholder in a corporation may sustain in a court of equity, in his own name, a suit founded on a right of action existing in the corporation itself and in which the corporation itself is the appropriate plaintiff. Those classes are: (1) Actions, or threatened actions, by directors beyond the authority conferred upon them by their charter, or other sources of organization. (2) Fraudulent transactions by the acting managers, in connection with some other party, or among themselves, or with other shareholders, as will result in serious injury. (3) Where the board of directors are acting for their own interests in a manner destructive of the corporation itself, or of its stockholders. (4) Where a majority of the stockholders are oppressively and illegally pursuing a course in the name of the corporation, in violation of the rights of the other stockholders. The court in its opinion said (104 U. S. 460, 26 L. Ed. 827):

"But, in addition to the existence of grievances which call for this kind of relief, it is equally important that, before the shareholder is permitted in his own name to institute and conduct a litigation which usually belongs to the corporation, he should show to the satisfaction of the court that he has exhausted all the means within his reach to obtain, within the corporation itself, the redress of his grievances, or action in conformity to his wishes. He must make an earnest, not a simulated, effort, with the managing body of the corporation, to induce remedial action on their part, and this must be made apparent to the court. If time permits or has permitted, he must show, if he fails with the directors, that he has made an honest effort to obtain action by the stockholders as a body, in the matter of which he complains. And he must show a case, if this is not done, where it could not be done, or it was not reasonable to require it. The efforts to induce such action as complainant desires on the part of the directors, and of the shareholders when that is necessary, and the cause of failure in these efforts should be stated with particularity, and an allegation that complainant was a shareholder at the time of the transactions of which he complains, or that his shares have devolved on him since by operation of law, and that the suit is not a collusive one to confer on a court of the United States jurisdiction in a case of which it could otherwise have no cognizance, should be in the bill, which should be verified by affidavit."

Hawes v. Oakland was a case where a stockholder in a corporation filed a bill, on behalf of himself and other stockholders, to prevent a water company from furnishing water to the city of Oakland free of charge for all municipal purposes. He alleged that he had re-

237 F.—60

·quested the board of directors to desist from such practice, and that said board had declined to take any proceedings in the premises. The court held that he had not taken the steps necessary to enable him to maintain the suit in his own name. The rule laid down in Hawes v. Oakland was the foundation of equity rule 94, now new equity rule 27, and has been recognized and followed in many cases.

As illustrative of the cases where the rule has been held to apply, and the plaintiff upon the record not shown to be entitled to maintain the suit in his own name, are the following:

Huntington v. Palmer, 104 U. S. 482, 26 L. Ed. 833. Suit to restrain a railway company from paying certain taxes alleged to be illegal. The bill alleged that the plaintiff had called the attention ·of the board of directors to the matter, and that they refused to act. There was no allegation of fraud or bad faith on the part of the directors. The court said:

"There is no averment of any effort to invoke the control of the body of the stockholders, or any reason why it was not done. Nor is it made to appear that a single stockholder was consulted by the complainant, or has any wish to contest the payment of these taxes with the state authorities."

The rule laid down in Hawes v. Oakland was held to apply.

Detroit v. Dean, 106 U. S. 537, 1 Sup. Ct. 500, 27 L. Ed. 300, was a case brought by a stockholder to restrain the enforcement of a city ordinance. Plaintiff was himself a director. The evidence in the record showed a desire on the part of the officers to bring the action in the federal court, and that the refusal of the directors, which was alleged, was a pretense. The rule was applied.

Taylor v. Holmes, 127 U. S. 489, 8 Sup. Ct. 1192, 32 L. Ed. 179, was a suit by a stockholder of a corporation whose term of existence had expired, to have corrected a deed of land. One director only was living. It was alleged that he had by his acts rendered himself incompetent to act. No request had been made to him, and no effort to have action by the stockholders. The rule was applied.

Dimpfel v. Railway Co., 110 U. S. 209, 3 Sup. Ct. 573, 28 L. Ed. 121. ·Action by two stockholders to have certain bonds issued by defendant company declared void, and ultra vires the company. No demand appeared to have been made upon the directors, and no appeal to the stockholders. The rule was applied.

Corbus v. Gold Mining Co., 187 U. S. 463, 23 Sup. Ct. 160, 47 L. Ed. 256, was a suit by a stockholder to restrain the company from paying a license tax. Failure to request the directors to refuse to pay was excused on account of their distance from the place where plaintiff was. The rule was applied, and the court said in its decision:

"It must not be understood· that a mere technical compliance with the foregoing rule is sufficient, and precludes all inquiry as to the right of the stockholder to maintain a bill against the corporation. This court will examine the bill in its entirety, and determine whether, under all the circumstances, the plaintiff has made such a showing of wrong on the part of the corporation or its officers and injury to himself as will justify the suit. The directors represent all the stockholders, and are presumed to act honestly and according to their best judgment for the interests of all. Their judgment as to any matter lawfully confided to their discretion may not lightly be challenged by any stockholder, or at his instance submitted for review to a court of equity.

The directors may sometimes properly waive a legal right vested in the corporation, in the belief that its best interests will be promoted by not insisting on such right. They may regard the expense of enforcing the right, or the furtherance of the general business of the corporation in determining whether to waive or insist upon the right. And a court of equity may not be called upon, at the appeal of any single stockholder, to compel the directors or the corporation to enforce every right which it may possess, irrespective of other considerations. It is not a trifling thing for a stockholder to attempt to coerce the directors of a corporation to an act which their judgment does not approve, or to substitute his judgment for theirs."

Wathen v. Jackson Oil Co., 235 U. S. 635, 35 Sup. Ct. 225, 59 L. Ed. 395. Suit to restrain compliance with a statute alleged to be unconstitutional. It was alleged that the directors desired to disobey the statute, but dared not on account of the penalties. It was alleged that the suit was not collusive. Held not sufficient, and the rule was applied.

On the other hand, Greenwood v. Freight Co., 105 U. S. 13, 16 (26 L. Ed. 961), was a suit to restrain the enforcement of a law which in effect annihilated a corporation, and transferred its property. Plaintiff alleged that he had requested the directors of his corporation to take steps to assert its rights, and that they had refused to do so. Bill set out the resolution of the board of directors, giving its reasons. The court said:

"It is sufficient to say that this bill presents so strong a case of the total destruction of the corporate existence, and of the annihilation of all corporate powers under the act of 1872, that we think complainant as a stockholder comes within the rule laid down in that opinion, and which authorizes a shareholder to maintain a suit to prevent such a disaster, where the corporation peremptorily refuses to move in the matter."

Doctor v. Harrington, 196 U. S. 579, 25 Sup. Ct. 355, 49 L. Ed. 606, was a suit by a stockholder to set aside a judgment against the corporation and a levy and sale thereunder, in favor of Harrington. It was alleged that Harrington controlled the action of the stockholders, and declined to give plaintiff any redress, or give him an opportunity to lay before the board of directors or stockholders the matters complained of. This was held sufficient within the rule.

In the case of Del. & Hudson Ry. v. Railway Co., 213 U. S. 435, 29 Sup. Ct. 540, 53 L. Ed. 862, where a stockholder of a lessor corporation sued for its benefit the lessee, and it was shown that the directors of the two corporations were also identical, and that the lessee corporation owned or controlled the voting power of sufficient stock of the lessor corporation to control its action, it was held that this was sufficient, without demand for relief upon the board of directors, and without effort to obtain relief at a stockholders' meeting.

Howard v. National Telephone Co. (C. C.) 182 Fed. 215. Suit by stockholder. Plaintiff alleged that the directors could not take the action desired, and that a majority of the stock was antagonistic in interest. Held sufficient.

Corey v. Independent Ice Co. (D. C.) 207 Fed. 459. Action for damages under the Sherman Act. Record showed demand on the directors, and that such relationship existed between the plaintiff

and the other stockholders that effort through them would be useless. Held that it showed sufficient compliance with the rule.

Hyams v. Cal. & Hecla Mining Co., 221 Fed. 529, 137 C. C. A. 239. Bill by stockholder in two corporations to prevent consolidation with a third, as contrary to the federal and state Anti-Trust Acts. Record showed that the suit, if successful, would be against the interests of the directors in the two companies, in which plaintiff was a stockholder; also that the third company held control of the voting power of the two companies. Held that it showed sufficient compliance with the rule.

Ogden v. Gilt Edge Consol. Mines Co., 225 Fed. 723, 140 C. C. A. 597. Petition for intervention in bankruptcy on behalf of a corporation by a stockholder. No demand shown on the directors, but the record showed that the interests of the directors were antagonistic. Held sufficient.

Ross v. Quinnesec Iron Mining Co., 227 Fed. 337, 142 C. C. A. 33. Bill to set aside contract made by a corporation. Bill alleged no demand on the directors, and the record showed that they were in absolute control through stock ownership, and that they would benefit by the contract. Held a sufficient showing.

The bill and record in the present case disclose the following facts: That the plaintiff is and since August, 1911, has been, the owner of 90 shares of stock in the defendant bank, out of a total of 100,000 shares; that in February, 1914, plaintiff and two other alleged shareholders wrote a letter to the defendant bank and directors, stating that they were and had been for more than a year stockholders in the bank, calling attention to the payment of $50,000 to Edwards, stating that in their opinion such payment was beyond the power of the bank or said board, and asking the rescission of the action, and the institution of proceedings to recover said amount from Edwards, and that the board refused to cause suit to be brought. It is not shown what reason, if any, the board had for the refusal. No further correspondence was had with the board, or efforts made with that body. Plaintiff further alleges that the suit is not a collusive one, and that the plaintiff believes that neither the bank nor the board of directors will take action in the direction requested by the plaintiff.

It appears from the record that a meeting of the stockholders intervened between the time of the payment to Edwards and the letter by the plaintiff to the directors, and that plaintiff was a stockholder at the time of the meeting. It is not shown that any attempt was made to bring the matter to the attention of the stockholders at this meeting, and no showing is made why this was not done. The record does not show that any attempt was made to bring about action by the stockholders in regard to the matter, or to call it to their attention. In May, 1914, the plaintiff alone brought the present suit. There is no claim of fraud or of bad faith on the part of the directors. There is no showing that the directors hold or have ever held a controlling, or even a large, interest in the stock of the bank. There is no showing that the directors received any benefit from the payment made, or that they would lose anything by a successful out-

come of a suit, if brought by the corporation to recover the money paid to Edwards, or that their interests were in any way antagonistic to those of the corporation, or of the plaintiff.. There is no showing that any of the stockholders were antagonistic to the bringing of such suit, or that the interests of the other stockholders were in any way antagonistic to the interest of the plaintiff.

The question of the right of the plaintiff to maintain this suit was first urged by motion, and again upon the trial of the cause. Opportunity was expressly given by the trial court to plaintiff to amend his complaint, and to make further showing in accordance with equity rule 27. Plaintiff expressly declined to amend or make further showing, on the ground that he considered it unnecessary.

If it be conceded that the establishment of the pension fund was within the power of the corporation, then the questions of whether Edwards had a right to participate therein, and whether the directors acted wisely in recognizing and compromising his claim, are questions properly belonging to the directors for decision, and, in the absence of fraud or bad faith, will not be inquired into by courts upon the suit of a single stockholder. If the question whether the corporation had the right to establish the pension fund is sought to be determined, then clearly, since the stockholders had authorized its establishment and directed the board of directors to carry out the plan, it could hardly be expected that the directors, at the request of one or two stockholders, would bring suit to have the whole pension plan fund declared invalid. The matter would be one pre-eminently for the consideration of the stockholders as a body, and the objection of the plaintiff to the pension fund plan should first have been brought to the attention of that body for redress of any wrong that he claims to have suffered. This is not an emergency suit, and no irreparable injury is threatened. Indeed, the wrong, if any, was committed long prior to the commencement of the suit. The extent of the damage which plaintiff suffered, if any wrong was committed, was about $45. The record presents a case where the plaintiff has not shown himself entitled to maintain the suit under equity rule 27, and the decree might well be affirmed on this ground alone. We have concluded, however, not to rest the decision solely upon this ground.

Turning to the merits: Plaintiff claims that the payment of the money to Edwards was purely gratuitous. Defendant claims that the payment was pursuant to the contract above set out. Plaintiff claims that there was no consideration for the contract. The question of adequacy of consideration is not open for discussion under the pleadings. If there was any consideration for the contract, plaintiff's attack upon it must fail. The items of consideration claimed are four in number: (1) Waiver of participation in the pension fund. (2) Waiver of salary for the remainder of the year. (3) Waiver of all claims against the bank. (4) An agreement not to enter into the employ, or engage in the business of any St. Louis bank or trust company, nor use his influence on behalf of any other bank or trust company, prior to December 31, 1913.

As to the waiver of a pension. It seems clear under the evidence

that Edwards had a claim to a pension. He had been in the service of the bank more than 25 years. Paragraph (c) of the pension provisions provides:

"Officers and employés severing their connection with the bank after 25 years or more of continuous service for any reason whatever, other than neglect of duty, shall receive pensions as above provided, such pensions, however, to cease if the beneficiary accepts a position in any other bank or trust company."

The contention of plaintiff that Edwards severed his connection with the bank by reason of neglect of duty is without evidence to support it. The statement made by the bank examiner, which was read into the minutes of the board of directors at their meeting July 24, 1912, which minutes were offered in evidence by plaintiff, objected to on the part of the defendant, and the objection sustained by the trial court, does not prove or tend to prove that there had been any neglect of duty on the part of Edwards. It simply calls attention to the fact that for some specific reasons the government had demanded a separation of Edwards from the bank, but these specific reasons were not stated. No mention is made of neglect of duty, and there may have been many reasons quite apart therefrom. Neglect of duty will not be presumed, and the evidence in the record does not support such a conclusion.

There being a valid claim to a pension on the part of Edwards, it was within the powers of the board of directors to compromise it. At what figure it should have been compromised is not open to inquiry under the pleadings in the case. The only real question, therefore, as to this alleged item of consideration, is whether the establishment of the pension fund itself was within the powers of the bank. It is elementary that the corporate powers of a national bank, as well as of other corporations, are of two classes: (1) Those expressly granted; and (2) those impliedly granted, as reasonably incident and necessary to the carrying out of the powers expressly granted. The former have to do largely with the main business objects and purpose of the corporation; the latter largely with the means and methods of attaining those objects and carrying out those purposes. The former are determined once and for all by the language of the charter or the fundamental law; the latter may change according to time, place, and surrounding circumstances. The test of the former is whether they are found in the words of the charter or law; the test of the latter is whether they are fairly incident to the former, and reasonably necessary to carrying them out.

[2] In determining whether a given act is within the former, the judgment and actions of the directors and stockholders have no legal weight or bearing. In determining whether a given act is within the latter, the judgment of the directors and stockholders, while not conclusive, is entitled to consideration. Morse on Banks and Banking, § 54; Machen, Modern Law of Corporations, vol. 1, §§ 68, 87–90; Thompson on Corporations (2d Ed.) §§ 2100–2129.

[3] In Burnes v. Burnes, 137 Fed. 781, 70 C. C. A. 357, this court said, speaking of the implied powers of a private corporation:

"While the powers of a corporation are limited to those expressly granted and those fairly incidental thereto, they include the latter as completely as the former, and they always include the indispensable and the suitable means to exercise the granted powers."

In Colorado Springs Co. v. American Publishing Co., 97 Fed. 843, 38 C. C. A. 433, this court said, in speaking of the same subject:

"To sustain an act done by a private corporation as a valid exercise of corporate power, it is only necessary, where the act is not challenged by the state, to show that the act in question was not prohibited by the company's charter, and that it had a natural and reasonable tendency to aid in the accomplishment of one or more of the objects for which the corporation was created."

That the word "necessary," when used in reference to implied powers, does not mean indispensable, and is not to be given a narrow, restricted meaning, it is only necessary to refer to McCulloch v. Maryland, 4 Wheat. 316, 413, 414, 4 L. Ed. 579.

The foregoing principles have been applied by the courts in almost numberless cases: As applied to acts and contracts by railroad companies, see, as illustrative, Green Bay Ry. Co. v. Union Co., 107 U. S. 98, 2 Sup. Ct. 221, 27 L. Ed. 413; Railway Co. v. Keokuk Co., 131 U. S. 371, 9 Sup. Ct. 770, 33 L. Ed. 157, and Jacksonville, etc., Ry. Co. v. Hooper, 160 U. S. 514, 16 Sup. Ct. 379, 40 L. Ed. 515. In the last case, the court quoted approvingly the following language of Lord Chancellor Selborne in reference to the doctrine of ultra vires, as follows:

"This doctrine ought to be reasonably, and not unreasonably, understood and applied, and that whatever may fairly be regarded as incidental to, or consequential upon, those things which the Legislature has authorized, ought not, unless expressly prohibited, to be held, by judicial construction, to be ultra vires."

The court said:

"In the application of the doctrine the court must be influenced somewhat by the special circumstances of the case."

As applied to relief associations formed by railway companies in connection with the care and treatment of their employés while injured, the same principles have been applied by the courts. State v. Pittsburg, etc., Ry. Co., 68 Ohio St. 9, 67 N. E. 93, 64 L. R. A. 405, 96 Am. St. Rep. 635; Harrison v. Railway Co., 144 Ala. 246, 40 South. 394, 6 Ann. Cas. 804; Maine v. Ry. Co., 109 Iowa, 260, 70 N. W. 630, 80 N. W. 315.

As applied to acts of business corporations, Ft. Worth City Co. v. Smith Bridge Co., 151 U. S. 294, 14 Sup. Ct. 339, 38 L. Ed. 167; Burnes v. Burnes, supra; Colo. Spgs. Co. v. Am. Pub. Co., supra; Schaeffer Piano Mfg. Co. v. National Fire Ext. Co., 148 Fed. 159, 78 C. C. A. 293; Steinway v. Steinway & Sons, 17 Misc. Rep. 43, 40 N. Y. Supp. 718. In the last case, the principles were applied where funds of a corporation were used in the establishment of a free library and free baths for its employés.

As applied to a national bank, see Brown v. Schleier, 118 Fed. 981, 55 C. C. A. 475, in which this court held that it was within the power of a national bank to erect a building for its own use, and that in so doing it was not limited to the construction of a building to be used solely for itself.

As applied to the granting of a pension by a bank to the relatives of a deceased employé, see Henderson v. Bank, Law Reports, 40 Chanc. Div. 170. Counsel for appellant, in commenting upon this last case, lays stress upon the fact that the stockholders gave authority to the directors to grant this pension. It must not be lost sight of that in the instant case the pension fund was established by express authority of the stockholders. It appears from the record that at a regular meeting of the stockholders on the 9th day of January, 1900, the following resolution was duly passed by the stockholders:

"Be it resolved that the board of directors of the National Bank of Commerce in St. Louis be, and they are hereby empowered to set aside from the net earnings of the bank annually, after first deducting losses and a sum equal to 6 per cent. of the capital, surplus, and undivided profits as the latter appears at the beginning of the year, such a sum as they may deem proper, not to exceed one-tenth of the remainder of said net profits, for the purpose of creating an officers' and employés' pension fund and an officers' and employés' profit participation fund, under such rules and regulations as may from time to time be enacted by said board."

[4] As we have seen above, appellant is not in a position to attack the action taken by the board of directors in reference to Edwards' claim of a pension, unless appellant can show that the pension plan as a whole was void. The burden is upon appellant to show this, for the same presumption of legality which attends the acts of a natural person attends the acts of a corporation, unless they are plainly and upon their face outside the powers of the corporation. Acts taken by corporations are presumed, in the absence of evidence to the contrary, to be within either the express or implied powers of the corporation. Thompson on Corporations (2d Ed.) § 2120, uses the following language in reference to acts by a corporation:

"A person who questions such transactions cannot assume either that the corporation had no power to act, or that in the given transaction the corporation exceeded its power, and that hence it must show that the transaction was within the scope of its powers. Precisely the opposite rule obtains. The maxim, 'omnia acta rite esse præsumuntur,' applies to the transactions of corporations as well as to individuals."

See, also, Railway Co. v. McCarthy, 96 U. S. 258, 24 L. Ed. 693.

Even if it were possible, it would serve no useful purpose to enumerate specifically the implied powers of a private corporation, whether engaged in the business of carrying on a railroad, a bank, or other business. In relation to the subject of employés only, numerous questions arise: What shall be the number of employés? What the amount of their salaries? Shall they be paid weekly or monthly? What shall be their hours of service? Shall they be paid for overtime work? Shall they be allowed vacation periods, and, if so, to what extent? Shall they receive pay during such periods of vacation? Shall they be paid during absence caused by sickness, and, if so, during what period of time? Where the employés are numerous at a given place, shall a lunch counter be provided and operated at cost, for the benefit of the employés? Shall hospital benefits be provided for sick or disabled employés?

There can be no doubt that these are matters relating to the internal management of the corporation, and as such within its implied powers

for determination. Can any valid distinction be drawn between the above matters and the establishment of a pension fund, in proper cases and under proper circumstances? May not this, under proper circumstances, as well as the former matters, have a direct and reasonably necessary bearing upon the successful carrying out of the business of the corporation, upon the class of employés likely to be obtained, upon the character of the service likely to be rendered, and upon the length of such service and the loyalty of the employés?

The tests in regard to all such matters are: Is the act or transaction prohibited by the charter or other law? Is the act or transaction reasonably suitable and necessary for the carrying on of the business for which the corporation was created and organized? Is the act or transaction performed in good faith, or as a mere cloak to some illegal or fraudulent act?

[5] In the instant case, the burden resting upon the appellant to show the invalidity of the action taken by the stockholders in establishing the pension fund, or the invalidity of the action taken by the board of directors in reference to Edwards' claim to a pension, has not been sustained. The cases cited by appellant are cases involving the question whether certain transactions were within the express powers of the bank in question. None of them involved the question whether the given act or transaction was within the implied powers of the bank. Indeed, several of the cases recognize that if the particular transaction under consideration was performed incidentally, and not as part of the main business of the bank, it would have been held valid. Such, for example, was the case of California Bank v. Kennedy, 167 U. S. 362, 17 Sup. Ct. 831, 42 L. Ed. 198, where the court held:

"The statutes of the United States relating to the organization and powers of national banks prohibit such banks from purchasing or subscribing to the stock of another corporation, although they may, as incidental to the power to loan money on personal security, accept stock of another corporation as collateral, and thus become subject to liability as other stockholders."

The same is true of First National Bank v. Converse, 200 U. S. 425, 26 Sup. Ct. 306, 50 L. Ed. 537.

What we have said relative to the burden resting upon appellant as to the pension matter, applies equally to the other items of consideration stated in the contract above mentioned by Edwards with the bank. The defendants were not called upon to show that the waiver of claims against the bank by Edwards constituted a good and valuable consideration, in other words, to show that there were such claims and their character; but the burden rested upon the plaintiff, under the pleadings, to show that there were no claims, if this were the fact.

The agreement in the contract by Edwards not to enter the employ of any other St. Louis bank or trust company during a certain period was also, in view of all the circumstances, a valid item of consideration.

[6] The claim that this provision of the contract was against public policy, as in restraint of competition, does not require discussion. The restraint was limited as to time, limited also as to place, and no public interest was involved. Limited restraints, under such circumstances,

have frequently been held valid. Gibbs v. Baltimore Gas Co., 130 U. S. 396, 9 Sup. Ct. 553, 32 L. Ed. 979; Cincinnati Packet Co. v. Bay, 200 U. S. 179, 26 Sup. Ct. 208, 50 L. Ed. 428; Harrison v. Glucose Sugar Refining Co., 116 Fed. 304, 53 C. C. A. 484, 58 L. R. A. 915; Knapp, v. S. Jarvis Adams Co., 135 Fed. 1008, 70 C. C. A. 536.

In our opinion, the appellant has failed to show that the payment to Edwards was a mere gratuity, and has failed to show that the contract made by him was either ultra vires the corporation or the board of directors.

The judgment and decree of the court below is affirmed.