Jesse A. Rothschild et al., Appellants, v. Sears, Roebuck and Company, Appellee.

Gen. No. 37,742.

Opinion filed November 20, 1935.

MAYER, MEYER, AUSTRIAN & PLATT, of Chicago, for appellants; FREDERIC BURNHAM and MILES G. SEELEY, both of Chicago, of counsel.

LEDERER, LIVINGSTON, KAHN & ADLER, of Chicago, for appellee; CHARLES LEDERER, SIGMUND LIVINGSTON and ARCHIE H. SIEGEL, all of Chicago, of counsel.

MR. PRESIDING JUSTICE HALL delivered the opinion of the court.

This is an appeal from an order of the superior court of Cook county, overruling demurrers to a series of pleas to the declaration filed in the case.

On January 20, 1931, the plaintiff, Rothschild & Co., a copartnership, consisting of Jesse A. Rothschild, Samuel I. Karger, Sidney W. Karger, Victor Kunzer, Jr., and Fuller M. Rothschild, who were engaged in the stock brokerage business, brought suit against Sears Roebuck & Co., a corporation, upon an alleged contract of the defendant to "take over from the plaintiff through the firm of Stein, Alstrin & Co., another brokerage firm, the brokerage account, of one Carl Reiss, an employe of the defendant corporation."

The declaration recites *inter alia* that on October 29, 1929, plaintiffs received from defendant corporation the following telegram:

"Sears Roebuck & Co. guarantees the account of Miss L. Brown and the accounts of any other Sears Roebuck and Co employes where the margin is short at present time stop We will arrange for the collateral you need a little later —

John Higgins Sears Roebuck and Co Vice Pres."

It is further alleged that on November 1, 1929, the defendant sent the following letter which was received by the plaintiff company on November 2, 1929:

"November 1, 1929.

"Rothschild & Co.

105 W. Adams St.,

Chicago, Ill.

"Gentlemen:

"This week you received from us either a telegram, special delivery letter, or both, advising you that we guaranteed certain accounts. In some instances we mentioned the name, and in nearly every instance we included employes whose margins had become weak, but whose names we did not know at the time. The market has strengthened up some, and we know that

a great many of the accounts we were guaranteeing have now become safe without our guarantee.

"If, by any chance, there is an account in your office of an employe of ours not fully protected at this moment, please write us, giving the name, the amount owed to you, and a list of the collateral being held by you for the account, and we will give you further instructions.

"It is assumed, of course, that in none of these accounts has a purchase been made since the receipt of our guarantee.

"We trust that while the market is so uncertain, you will advise us before you sell out the account of any one of our employes.

"We are grateful to you for your hearty co-operation and assistance in this matter, and thank you very much.

> "Very truly yours,
> SEARS, ROEBUCK AND Co.
> By Jno. Higgins,
> Vice President."

It is alleged that after the receipt of both of the before mentioned documents, Rothschild & Company, on November 2, 1929, mailed to the defendant corporation the following letter:

"November 2, 1929.

"Sears Roebuck & Company,
  Chicago, Illinois
          "Attention: Mr. John Higgins:
"Dear Sir:

"One of your employees, Mr. Carl Reiss, has an account with us, his debit balance as of October 31, was $61,761.85, and his account is long the following securities:

1 M Unterelbe Pwr. & Lite 6s 1953 A

1 M Dept. Cauca Valley 7s 1948

1 M Vicksburg Bridge Term 6s 1958

1 M May Bldg. of Cal. 5½s 1932

1 M 1088 Park Ave. Apt. 6s 1939
1 M Dodge Bldg. 7s 1935
$500 Straus Bldg. 6s 1940
1 M Amer. Tel. & Tel. 5½s 1943
1 M Cities Service 5s 1958
100 Madison Kedzie Bank
1 M Assoc. Gas & Elec. 6s 1999

"Kindly advise us when you will take up this account as per your message of October 29, and your letter of November 1.

"Yours very truly,"

It is alleged that thereafter plaintiffs received from defendant the following:

"November 7, 1929.

"Rothschild & Co.,
105 W. Adams St.,
Chicago, Ill.

"Re: Account of Carl Reiss.

"Gentlemen:

"In order not to scatter Mr. Rosenwald's collateral into a hundred or more brokerage houses and banks where the collateral would be tied up for an indefinite period, we think it best that, where there are not more than few individuals with one broker or bank, they be transferred into one place. We have accordingly made arrangements with Stein, Alstrin & Co. to take over these scattered accounts. We believe this will be more agreeable to you than your holding of collateral that does not belong to the individual, and could not be sold to protect you until Mr. Rosenwald was so notified.

"We wish again to thank you for your kindness in holding this account until something could be done with it.

"Very truly years,
SEARS, ROEBUCK & Co.
By Jno. Higgins,
Vice President."

The declaration further alleged that in consideration of the promises of the defendants, plaintiffs refrained from selling any of the securities of the account of Carl Reiss, that the market value of these securities thereafter greatly depreciated, that the plaintiff company thereby lost the greater part of the benefit of the securities for the debit balance which they held against Reiss consisting of the securities held in the account of Reiss, that Rothschild & Company neither purchased additional securities for the Reiss account, nor sold any securities held by them for this account after the receipt of the telegram from the defendants; that plaintiffs have been and were at the time of, and since the filing of the declaration herein, ready, able and willing to deliver the securities held in the account upon the payment of the debit balance held against Reiss; that Reiss has failed and refused to pay the debit balance, and that by reason of the promises of the defendants, it is indebted to the plaintiffs in the sum of $61,761.85, together with interest at the rate of five per cent per annum from October 31, 1929. There are two counts to the declaration, which are similar in import.

It is the theory of the plaintiffs that the correspondence between the parties made a contract between them, by which defendants, for a consideration, promised to purchase the securities from the plaintiffs.

A series of pleas were filed by the defendants, the substance of which is that the agreement between defendants and plaintiffs was merely one of guarantee, and that the alleged contract, even if made, as alleged, was and is *ultra vires* and beyond the power of defendant to make.

Our construction of the correspondence is that it makes an absolute promise on the part of the defendant company to take over the securities held by the plaintiffs on account of Reiss, in consideration of plain-

tiffs' not selling Reiss out in order to protect themselves. There was no alternative mentioned. Sears Roebuck & Company did not, by these voluntary communications to the plaintiff company, agree to take over these stocks in case Reiss failed or refused to do so. The defendant corporation voluntarily requested and urged the plaintiffs not to sell the securities pledged to plaintiff company in order to reimburse themselves for the balance owned by Reiss to plaintiffs. In our opinion, there was an agreement made by defendant that in consideration of such forbearance it would purchase these securities through another broker.

The pleas filed by defendants in which they allege that the contract between plaintiffs and defendants is *ultra vires* and beyond the power of defendants to make in that respect, contain, among other things, the following:

"That it is a corporation organized under the general corporation laws of the State of New York and is a business corporation for the purpose of to manufacture, buy, sell, import, export, distribute and deal in goods, wares and merchandise of every kind and any and all materials and articles required for or used or useful in connection with all or any of the objects aforesaid, and to do a general printing and publishing business; and that it has and is now conducting a general merchandising business, buying and selling merchandise and in the manufacture of merchandise which it so sells. That it was not at any time heretofore and is not now authorized by law to enter into the said supposed contracts set forth in said first count of said declaration and that said supposed obligation was not within the corporate powers of the defendant and is ultra vires and that the said defendant was in no manner connected with or interested in the transactions between said plaintiffs and said Carl Reiss, nor was it

in any manner interested or connected with the said alleged debit balance and indebtedness in favor of the plaintiffs and due and owing from said Carl Reiss.

"And the defendant for further plea in this behalf says that the several supposed causes of action in said declaration mentioned are one and the same, to-wit, the supposed cause of action in the first count mentioned, and not different causes of action."

Also:

"That said defendant is a corporation organized under the laws of the State of New York and qualified as such foreign corporation in the State of Illinois, that it is a corporation organized for pecuniary profit and not for banking, insurance, building and loan or surety business. That as such foreign corporation it was duly qualified to do business in the State of Illinois, to-wit, the 26th day of June, 1906, on which date there was issued to it by the Secretary of State of the State of Illinois license and permit to do business as a foreign corporation in the State of Illinois for the following purposes: 'To manufacture, buy, sell, import, export, distribute and deal in goods, wares and merchandise of every kind, and any and all materials or articles required for, or used or useful in connection with, all or any of the objects aforesaid, and to do a general printing and publishing business, also to purchase or otherwise acquire, own and hold such real property as may be necessary for the proper carrying on of its legitimate business, and to build, erect, construct, purchase, hire or otherwise acquire, own, provide, establish, maintain, hold, lease and operate factories, warehouses, agencies, depots, buildings, structures, offices, houses, works, machinery, plants, and all other things of whatsoever kind and nature, suitable, necessary, useful or advisable in connection with any or all of the objects hereinbefore or hereinafter set forth, and

to convey, sell, assign, transfer, lease, mortgage, pledge, exchange or otherwise dispose of any of such property as far as, and to the extent that the same may be permitted by the laws of the State of Illinois, and in general to exercise all the powers conferred by the laws of the State of Illinois consistent with the foregoing objects above expressed, it being hereby expressly provided that the foregoing enumeration of specific powers shall not be held to limit or restrict in any manner such general powers.'

''That since the aforesaid date it has maintained an office in the State of Illinois and transacted the business of buying and selling merchandise as provided for in the aforesaid license and permit, and that ever since the aforesaid issuance of said license and permit it has acted thereunder and is still acting thereunder as a foreign corporation doing business in the State of Illinois. That it in no manner was interested in the transactions between said plaintiffs and said Carl Reiss, which resulted in said supposed debit balance and indebtedness due from said Carl Reiss to said plaintiffs and that it was in no manner interested in said debit balance and indebtedness or in any collateral deposited by said Carl Reiss with said plaintiffs. That said supposed obligation of this defendant set forth in said first count of said declaration was made in the State of Illinois and the said supposed writings obligatory set forth in said count of said declaration were made and delivered to the plaintiffs in the State of Illinois and not any other place and that said supposed obligations of said defendant declared upon by the plaintiffs in said first count of the declaration were not within the authorized power of the defendant under its permit and license issued to it by the State of Illinois as a foreign corporation and were not within its corporate powers as a foreign corpora-

tion in the State of Illinois and were and are wholly *ultra vires.''*

The power given to defendant corporation upon which the plaintiffs seem principally to rely, is that contained in its eighth plea, which is to the effect that it has power, ''to purchase . . . own . . . hold . . . factories and all other things of whatever kind and nature, suitable, necessary, useful or advisable in connection with any or all of the objects hereinbefore or hereinafter set forth,'' and it is argued that this clause gave the defendants the power and right to purchase these securities. By section 103 of chapter 32, Ill. State Bar Stats. 1935, it is provided that:

''No foreign corporation shall transact in this State any business which a corporation organized under the laws of this State is not permitted to transact. A foreign corporation which shall have received a certificate of authority under this Act shall, until a certificate of revocation or of withdrawal shall have been issued as provided in this Act, enjoy the same, but no greater, rights and privileges as a domestic corporation organized for the purposes set forth in the application pursuant to which such certificate of authority is issued; and, except as in this Act otherwise provided, shall be subject to the same duties, restrictions, penalties and liabilities now or hereafter imposed upon a domestic corporation of like character.''

In *Wheeler v. Home Savings & State Bank,* 188 Ill. 34, an action of replevin was brought by a corporation organized under the laws of the State of Illinois to carry on a wholesale drug business, to recover certain warehouse receipts, the property of the corporation, representing certain whiskey, which certificates had been pledged with the bank as security for a debt of one of the directors of the corporation, who was also its general manager. In holding that the corporation

had no power under its charter to pledge any of its assets as security for a debt of one of its officers, the Supreme Court said:

"It is not claimed that the company was in any way responsible for or interested in the debt of its general manager, Peter J. Singer, to the bank, or that the pledging of its property to secure this debt was for its benefit or for any corporate purpose. Such a corporation has no corporate power to become the mere surety of another or to pledge its property for the payment of the debt of another in which it has no interest or for which it is in no wise responsible and for mere accommodation. Its charter is the measure of its powers, and all power not expressed or fairly to be implied is denied to it. The power to lend its credit to another or pledge its property to secure the debt of another in a manner in which it has no interest or is not for its benefit, cannot, as a general rule, be implied. 7 Am. & Eng. Ency. of Law (2d ed.) 788."

It is claimed by plaintiff, however, that in protecting this employee Reiss, among others, in their stock purchases, and in preventing their stocks from being sold for the purpose of settling any margin accounts which they might owe to brokers, the power to do so can be said to be implied and to be comparable to that assumed by certain corporations in establishing a pension fund for its employees, and the case of *Heinz v. National Bank of Commerce,* 237 Fed. 942, among other cases, is cited as authority for this claim. In that case, the court held that the corporation in question had the power to establish such a fund for its employees, but, among other things, said:

"The tests in regard to all such matters are: Is the act or transaction prohibited by the charter or other law? Is the act or transaction reasonably suitable and necessary for the carrying on of the business for which

the corporation was created and organized? Is the act or transaction performed in good faith, or as a mere cloak to some illegal or fraudulent act?''

In *Best Brewing Co. v. Klassen,* 185 Ill. 37, the brewing company was sued on an appeal bond given in a forcible entry and detainer suit brought against one of its customers. The bond was signed by the brewing company by its president. The defense was that the act of signing and giving the bond was *ultra vires,* and beyond the corporate power of the defendant corporation. From a reading of the opinion, we conclude that in answer to such plea, it was represented by the plaintiff in the suit on the bond, that in so signing the bond for one of its customers, that the brewing company had the implied power to execute such a bond for one of its customers, inasmuch as it would reap a benefit by so doing, and the Supreme Court said:

''We think the primary question here is not whether appellant has reaped a benefit from the act of becoming surety for Rounds upon the bond, but whether the act of signing it was within the scope of its corporate authority. The purpose of the corporation, as expressed in its charter, is to manufacture and sell ale, beer and porter and carry on a general brewing business. It would seem no acts could be more unlike than the doing of those authorized by the charter of the company and the signing of appeal bonds as surety. The instrument was executed in a suit not by or against the corporation, but by a third person against another to recover possession of a house. *Prima facie* the signing by the company of an appeal bond in such a suit was an act beyond the purpose for which it was organized, and consequently illegal. If it had been shown that it was executed clearly for the purpose of promoting or protecting its own business of brewing or selling beer, etc.—that is to say, if the act had been reasonably necessary to accomplish the end for which

the corporation was formed,—it would have been within the scope of the corporate power. But it cannot be held that every act in furtherance of the interests of a corporation is *inter vires*. Many acts can be suggested which, though beneficial to the business of a corporation, are too remote from its general purposes to be deemed reasonably within its implied powers. What is and what is not too remote must be determined according to the facts of each case. The rule has been stated to be: In exercising powers conferred by its charter, a corporation 'may adopt any proper and convenient means tending directly to their accomplishment, and not amounting to the transaction of a separate, unauthorized business.' *Clark v. Farrington,* 11 Wis. 340.'' See also *People ex rel. v. Wiersema State Bank,* 361 Ill. 75.

We are of the opinion that the making of this contract by defendant, to purchase these stocks for the purpose of protecting one of its employees in his stock speculations, which the record indicates is the fact, was so remote from any of the powers granted to the defendant corporation, that such contract must be held to be *ultra vires* and beyond the power of the corporation to make. The judgment of the superior court is affirmed.

*Affirmed.*

HEBEL and DENIS E. SULLIVAN, JJ., concur.